## NORTHWESTERN MUT. FIRE ASS'N v. UNION MUT. FIRE INS. CO. OF PROVIDENCE, R. I.

### No. 480.

District Court, W. D. Washington, N. D.

June 22, 1943.

Shank, Belt, Rode & Cook and Jo Cook, all of Seattle, Wash., for plaintiff.

Bogle, Bogle & Gates and Ray Dumett, all of Seattle, Wash., for defendant.

BOWEN, District Judge.

The above entitled cause having come on regularly for trial before the undersigned Judge of the above entitled Court, sitting without a jury, on December 29 and 30, 1942, said trial thereafter continuing on March 3 and 4, 1943; both parties having introduced their evidence and having rested; written briefs having thereafter been served and filed by both parties, and both parties having thereafter orally argued the cause to the court; the court at the conclusion of the oral argument having orally announced its decision in favor of the defendant and against the plaintiff; now, therefore, the court being fully advised in the premises, makes the following

## Findings of Fact.

I. That at all times herein mentioned the plaintiff Northwestern Mutual Fire Association, was and now is a corporation duly incorporated and existing under and by virtue of the laws of the State of Washington; and the defendant Union Mutual Fire Insurance Company, was and now is a corporation duly incorporated and existing under and by virtue of the laws of the State of Rhode Island.

II. That the amount in controversy herein, exclusive of interest and costs, exceeds the sum of $3,000.

III. That at all times herein mentioned there was, and still is, in full force and effect, a certain reinsurance agreement, commonly referred to as a "treaty", dated January 1, 1940, between the defendant, as the reinsuring company, and the plaintiff, as the reinsured company. That by its terms this treaty became effective as of January 1, 1940. That a copy of said treaty is set forth on pages 1 to 13, inclusive, of plaintiff's amended complaint herein.

IV. That Article VIII of said treaty of January 1, 1940, provides, among other things, that cessions of reinsurance thereunder by the plaintiff to the defendant shall in no case and at no time on one risk exceed $25,000 nor the amount retained net without reinsurance by the reinsured company at its own risk and liability on the same property reinsured by the said reinsured company with the reinsuring company.

That Article VII of said treaty provides, among other things, that reinsurance ceded by the plaintiff to the defendant thereunder shall be ceded on the daily report plan.

V. That during the year 1940 the Washington Toll Bridge Authority constructed a single-span suspension bridge across the Tacoma Narrows, near Tacoma, Washington, known as the Tacoma Narrows Bridge. That the plaintiff directly wrote $350,000 of insurance on the Tacoma Narrows Bridge, insuring the Washington Toll Bridge Authority against loss or damage by various risks, including windstorm and collapse, upon the Tacoma Narrows Bridge and approaches (but excluding the Administration Building). That the plaintiff specifically reinsured $300,000 of that amount with various insurance companies, including the defendant, under the plaintiff's various reinsurance treaties.

VI. That, in as much as the maximum amount which the plaintiff could cede to the defendant on one risk under Article VIII of said treaty was $25,000, and since the plaintiff desired to cede to the defendant more than said maximum amount of reinsurance on the Tacoma Narrows Bridge, the plaintiff on June 10, 1940, wired the defendant asking for specific authorization to do so. That in said wire of June 10, 1940, introduced in evidence herein as Defendant's Exhibits A-1 and A-2, the plaintiff stated:

"Please refer our letter May 31 Washington Toll Bridge Authority—Tacoma Narrows Bridge. Further information just received indicates PML about 50%.

"We will retain $50,000. Please wire your authorization."

That on June 11, 1940, the defendant wired the plaintiff authorizing said cession of $50,000 of reinsurance on the Tacoma Narrows Bridge. That said wire has been introduced in evidence herein as defendant's Exhibit A-3.

VII. That some time in June 1940 the plaintiff transmitted to the defendant its Daily Report, or Certificate of Reinsurance, No. 10852 (introduced in evidence herein as Defendant's Exhibit A-5). That in said daily report plaintiff stated to the defendant that it was ceding to the defendant $50,000 of reinsurance on the Tacoma Narrows Bridge and approaches (but excluding the Administration Building) effective July 1, 1940. That in this daily report the plaintiff further stated to the defendant that the P. M.L. was 50% and that the plaintiff "retains identical $50,000".

VIII. That the plaintiff's statement in its said wire of June 10, 1940, that it would retain $50,000, and the plaintiff's statement in said daily report No. 10852 that it was retaining "identical $50,000", constituted warranties to the defendant that the plaintiff was retaining, under Article VIII of said treaty, $50,000 net without reinsurance by the reinsured company at its own risk and liability on the same property reinsured by the said reinsured company with the said reinsuring company. That the defendant, believing and relying upon the plaintiff's said warranties as it was justified in doing, authorized and approved said cession of $50,000. That said cession of the plaintiff to the defendant was a cession of $50,000 of reinsurance upon the Tacoma Narrows Bridge and approaches as one unit and risk, the single-risk maximum of $25,000, designated by Article VIII

of said treaty, being increased to $50,000 by the above mentioned specific authorization and approval of the defendant, pursuant to and in accordance with the provision of Article VIII of said treaty permitting this to be done in specific cases subject to the approval of the defendant. That the court finds that said reinsurance was not ceded to the defendant upon a two-risk or multiple-risk basis, but, on the contrary, was ceded on a one-risk basis.

IX. That on November 7, 1940, the Tacoma Narrows Bridge suffered considerable damage from a risk within the scope of the insurance policy written by the plaintiff upon said bridge; and the Washington Toll Bridge Authority made claim against the plaintiff to the full amount of said policy as for a total loss. That a lawsuit for recovery of the claimed loss was instituted by the Washington Toll Bridge Authority against the various insurance companies which had written direct insurance upon said bridge, and this suit was finally settled by the Authority and said direct insurers for a total amount of $4,000,000, which was approximately 77% of the total amount of the direct insurance written upon said bridge. That this sum of $4,-000,000 was paid to the Washington Toll Bridge Authority by the various direct insurers.

That on August 25, 1941, the plaintiff wrote the defendant, confirming said settlement and enclosing proof of loss indicating payment due from the defendant to the plaintiff in the amount of $38,461.54. That said proof of loss has been introduced in evidence herein as Defendant's Exhibit A-6. That said proof of loss contains, among other things, the following statement: "The net loss sustained by the reinsured company after deducting all reinsurance, was $38,461.54 (prior to excess)."

That on September 8, 1941, the defendant wrote the plaintiff, acknowledging receipt of the plaintiff's said letter of August 25, 1941, and the enclosed proof of loss. That said letter of September 8, 1941, has been introduced in evidence herein as Defendant's Exhibit A-7. That in said letter the defendant stated:

"We have your letter of August 25, confirming adjustment of the above loss for a total amount of $4,000,000 with $5,200,000 of insurance to contribute, and enclosing proof of loss indicating payment due from the Union in an amount of $38,461.54. We note that in the proof of loss you have shown the net loss sustained by the Northwestern as the same amount of $38,461.54, but have indicated this net loss to be 'prior to excess'.

"We do not understand exactly what this means, and would appreciate a further explanation on this point, as it was our understanding as indicated in certificate No. 10852 that the Northwestern retained absolutely net an amount of $50,000 on this risk. If this is not the case and the Northwestern's net, without reinsurance, is not $50,000 and your actual loss will therefore be less than the amount indicated, we would appreciate it if you would advise us exactly what your net loss will be on the risk."

That on October 1, 1941, the plaintiff wrote the defendant, answering the defendant's said letter of September 8, 1941. That said letter of October 1, 1941, has been introduced in evidence herein as Defendant's Exhibit A-8. That in said letter the plaintiff stated in part: "The facts of the matter are that at the time this policy was written and the reinsurance placed, the Northwestern had in effect a catastrophe excess reinsurance contract whereby we were reinsured to the extent of 90% of all loss in excess of $30,000 in any one catastrophe, although in establishing our net line this fact was given no consideration whatsoever."

X. That the excess of loss reinsurance contract referred to in the plaintiff's said letter of October 1, 1941, has been introduced in evidence in this case as Plaintiff's Exhibit 1. That said contract, which was executed between the plaintiff and Lloyd's, became effective on January 1, 1940, and at all times herein mentioned was and still is in full force and effect. That by the terms of said contract the plaintiff was reinsured for 90% of any net amount for which it might become liable in excess of $30,000 in any one loss, but in no event to exceed $200,000. That said contract applied to the Tacoma Narrows Bridge, and, as applied to said bridge, constituted a type of reinsurance, known as excess of loss reinsurance.

XI. That on October 10, 1941, the defendant wrote the plaintiff, acknowledging receipt of the plaintiff's said letter of October 1, 1941. That said letter of October 10, 1941, has been introduced in evidence herein as Defendant's Exhibit A-9. That this letter states in part:

"On the basis of this information, it would appear that we have been overlined on this risk, as our reinsurance contract with you, under which you cede business to us, provides that cessions shall, in no case, exceed the amount retained net, without reinsurance by the Northwestern.

"On the basis of your letter, we believe that the actual net amount retained by the Northwestern without reinsurance was only $32,000, instead of $50,000 as indicated in the certificate, and, on, the basis of the contract, our Union line should also have been not exceeding $32,000 which, on the basis of an approximate 77% loss, would make our loss payment only approximately $25,-000, instead of $38,461.54 as called for by the proof of loss submitted."

XII. That the purpose of the net retention provision in Article VIII of said reinsurance treaty of January 1, 1940, is to assure the reinsurer that the ceding company will at all times have as much at stake, dollar for dollar, in the particular insurance as the reinsurer, since the reinsurer must depend upon the knowledge, judgment, diligence and good faith of the ceding company in investigating and appraising the risk, placing the original insurance and making investigations and adjustments in the event of loss.

XIII. That, by virtue of the existence of said excess of loss reinsurance contract between the plaintiff and Lloyd's (Plaintiff's Exhibit 1), the maximum liability of the plaintiff in the event of any one loss to the Tacoma Narrows Bridge was $32,000; and the actual amount retained net under Article VIII of said treaty by the plaintiff, without reinsurance at its own risk and liability on the same property so reinsured by the plaintiff with the defendant, was at all times $32,000; and these facts were readily determinable by, and known to, the plaintiff at the time it made said cession to the defendant.

That the plaintiff, in making said cession of $50,000 of reinsurance to the defendant, owed to the defendant an obligation of the highest good faith to correctly compute and advise the defendant of the plaintiff's actual net retention under Article VIII of said reinsurance treaty and to further advise the defendant of all relevant facts bearing upon said net retention and the nature of the risk. That the plaintiff did not inform the defendant, as it should have done, that its actual net retention was $32,000, and not "identical $50,000" as represented and warranted to the defendant. That the defendant has been prejudiced by reason of such failure on the plaintiff's part. That, in view of the plaintiff's actual net retention of $32,000, the plaintiff was without right or authority, under Article VIII of said treaty, to cede to the defendant more than $32,000 of reinsurance on said bridge.

XIV. That said reinsurance treaty of January 1, 1940, between the plaintiff and the defendant provides in Article XIV as follows:

"Adjustment of Liability to Conform to Agreement for Net Retention by the Reinsured Company. If in case of loss it should appear that the amount ceded to the reinsuring company is in excess of the amount authorized in Article VIII hereof, the amount reinsured with the reinsuring company shall be reduced in such manner that the liability of the reinsuring company shall not exceed the amount for which it would have been liable had the provision for net retention provided for in Article VIII been complied with."

That the defendant was and is entitled to demand, as it did demand, that its liability with respect to such reinsurance be adjusted in accordance with the provisions of said Article XIV. That had the provision governing net retention in Article VIII of said treaty been complied with by the plaintiff, the defendant would have been ceded $32,000 of reinsurance and would have been liable for its pro rata share of the loss, computed on the basis of a $32,000 cession. That the court finds that the amount of defendant's liability to the plaintiff with respect to said reinsurance must be determined under said Article XIV on the basis of a $32,000 cession.

XV. That the amount of defendant's actual liability to the plaintiff, computed in accordance with Article XIV of said reinsurance treaty, was $25,624.31. That said amount, plus interest at 6% per annum to June 21, 1942, or a total amount of $26,-897.55, was tendered and paid by the defendant to the plaintiff on June 20, 1942, and was accepted by the plaintiff on that date. That it was stipulated and agreed, however, by the parties hereto that said payment was made and accepted without prejudice to, or waiver of, the plaintiff's claim for any amount in excess of the sum so paid, and without prejudice to, or waiver

of, the defendant's objection and defenses to the plaintiff's claim for any amount in excess of the sum so paid. That the plaintiff has been fully paid by the defendant all that the plaintiff is entitled to receive from the defendant.

XVI. That during the trial herein the court permitted the plaintiff to make a trial amendment to its amended complaint herein as follows:

"X. That, under the usages and custom of the insurance business and in the insurance world, the term 'net retention' or the term 'amount retained net without reinsurance by the reinsured company at its own risk and liability on the same property reinsured by the said reinsured company with the reinsuring company' does not include and has no application to any catastrophe excess insurance, and that such catastrophe excess insurance is not considered in arriving at such net retention."

██ That the court, out of an abundance of caution, provisionally permitted the plaintiff to introduce testimony to support the allegations of said trial amendment and permitted the defendant to introduce evidence in rebuttal thereto. That the court finds that the terms of Article VIII of said treaty of January 1, 1940 are plain, clear and unambiguous and do not permit of modification, amendment or interpretation by extrinsic evidence. That the court further finds that in any event, under the customs and usages of the insurance business and in the insurance world, the term "amount retained net without reinsurance by the reinsured company at its own risk and liability on the same property reinsured by the said reinsured company with the reinsuring company", as used in Article VIII of said treaty, does include and does apply to excess of loss reinsurance such as Plaintiff's Exhibit 1, and means what it says, namely: the amount retained net by the reinsured company at its own risk and liability on the same property reinsured by the reinsured company with the reinsuring company after deducting all reinsurance, including excess of loss reinsurance such as Plaintiff's Exhibit 1.

██ XVII. That the plaintiff introduced testimony to support its contention that the term "P. M. L." ("probable maximum loss"), as used in its wire of June 10, 1940, and its daily report No. 10852, indicated two risks; and the defendant introduced testimony in rebuttal thereto. The court finds from a preponderance of the evidence that the contention of the plaintiff in this regard is not sustained, and further finds that said term did not and does not indicate two risks or a multiplicity of risks as applied to the facts and circumstances in this case.

### Conclusions of Law.

I. That the plaintiff is entitled to no recovery from the defendant herein. That the defendant is entitled to a judgment and decree herein dismissing this cause, together with the complaint and amended complaint upon which the same is based, with prejudice and with costs to the defendant.